**Frank Henry THOMPSON, Appellant,**

v.

**Marion R. LACEY, Warden, Federal Correctional Institute, Sandstone, Minnesota, Appellee.**

No. 87–5045.

United States Court of Appeals, Eighth Circuit.

Submitted April 2, 1987.

Decided May 5, 1987.

Before McMILLIAN, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

PER CURIAM.

Frank Henry Thompson, a prisoner at the Federal Correctional Institution at Sandstone, Minnesota, appeals pro se and in forma pauperis from the district court's [1] denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1982). We affirm.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

## I. BACKGROUND

Thompson is serving a parole violator term. He was convicted of bank robbery, and the conviction was affirmed on appeal. *United States v. Thompson*, 624 F.2d 1109 (8th Cir.) (reported decision but unpublished opinion), *cert. denied*, 449 U.S. 957, 101 S.Ct. 365, 66 L.Ed.2d 222 (1980).

On December 7, 1984, Thompson was released on parole from a contract halfway house where he was serving his original sentence. As of December 7, 1984, Thompson had 1,278 days remaining on his sentence. Additionally, he had accumulated approximately 633 days of statutory good time (SGT) and 265 days of extra good time (EGT).

By a Notice of Action dated October 22, 1985, the Parole Commission revoked Thompson's parole because of parole violations. The Parole Commission credited Thompson with all the time he had spent on parole until June 27, 1985, and ordered Thompson reparoled after six months with a special drug aftercare condition. Thus, Thompson's reparole date was January 17, 1986.

On November 25, 1985, Thompson was transferred again to a contract halfway house, but he was returned to the Sandstone facility on January 28, 1986, as a halfway house program failure. He had not been released on parole on January 17, 1986, because he had been found guilty of using drugs twice, in violation of institutional rules.

On February 5, 1986, the Parole Commission reopened Thompson's case. A parole rescission hearing was held on March 31, 1986. On April 15, 1986, the Parole Commission issued its decision rescinding Thompson's reparole grant and granting a new presumptive reparole date of January 16, 1987.

Thompson filed an administrative appeal from the Parole Commission's decision. The decision was affirmed by the Parole

Commission's National Appeals Board on June 26, 1986. Thompson also requested administrative relief from the Bureau of Prisons. Specifically, he requested credit for the SGT and EGT he had earned prior to his first parole in 1984. This was denied, and the denials were upheld on Thompson's appeals to the Bureau of Prisons Regional Office and National Office.

Thompson is now serving his 1,077–day parole violator term at Sandstone. His full term date is now calculated as June 27, 1988; his statutory release date is now calculated as September 19, 1987.

## II. DISCUSSION

Thompson raises the following three grounds in his petition:

A. That the Parole Commission unlawfully denied him credit for the SGT and EGT he had earned prior to his parole in 1984;

B. That the Parole Commission violated its legal certification procedures when it used the disciplinary hearing at the halfway house as a basis to rescind the reparole granted Thompson; and

C. That he was induced to admit the drug violations at the disciplinary hearing and at the parole rescission hearing in exchange for a promise, now unkept, that the Parole Commission would retard his reparole by no more than thirty days for the drug violations.

Upon a magistrate's report and recommendation, to which Thompson filed no objections, the district court dismissed Thompson's petition.

### A. Denial of Good Time Credits

■ Because good time credits accumulated during a regular term are forfeited upon a parole revocation, Thompson is no longer entitled to the SGT and EGT he had earned prior to his parole revocation. He is now only entitled to the good time credits he earns during his parole violator term. *Bentsen v. Ralston*, 658 F.2d 639, 640 (8th Cir.1981) (per curiam) (and cases cited therein). *See* 28 C.F.R. § 2.35(b) (1986) (only function of good time credits is to determine time for conditional or supervised release; good time credits earned have no further effect to shorten the time

to serve because of a violation of parole). Consequently, the SGT and EGT credits which Thompson had accumulated prior to his parole in 1984 no longer have any effect.

### B. Certification that the Disciplinary Hearing was Valid

■ When a rescission hearing is to be based on a disciplinary hearing conducted at a contract facility, the Parole Commission's rules require that the disciplinary hearing first be certified as legally adequate. *United States Parole Comm'n Rules & Procedures Manual*, Notes & Procedures ¶ 2.34–03(b), at 92 (Nov. 4, 1985). In this case, the disciplinary hearing was certified as valid on February 3, 1986. The Parole Commission determined on February 5, 1986, to reopen Thompson's case, and the rescission hearing was held on March 31, 1986. Thus, because the certification antedated the rescission hearing, the rescission hearing could lawfully be based on that disciplinary hearing. Consequently, the facts do not support Thompson's claim.

### C. Admissions

■ The government disputes that it promised Thompson to retard his parole by only thirty days in exchange for his admissions. Although Thompson used the word "promise" in his complaint, he states elsewhere in his pleadings that he was "led to believe" that the sanction would only be a thirty-day retardation of parole. Thompson's admittedly subjective state-of-mind thus belies his factual contention that the government made an unequivocal promise.

The admissions were made first to a disciplinary committee prior to the Parole Commission's determination to reopen Thompson's case. The committee did recommend in writing that Thompson's parole be revoked by only thirty days. Thus, whether or not a promise was made by the committee members, Thompson cannot complain about the committee's action.

The Parole Commission thereafter held a parole rescission hearing. Apparently, Thompson again admitted the drug violations. Even so, the district court found that there was a sufficient independent ba-

sis—the results of two urinalyses—upon which to find Thompson had twice used drugs illegally. Thompson has not challenged the reliability of the testing procedures or the results thereof.[2] Further, it is significant that Thompson has not alleged that the Parole Commission violated the procedural safeguards provided by 18 U.S.C. § 4214 (1982) (revocation of parole), *repealed by* Sentencing Reform Act of 1984, §§ 218(a)(5), 235(a)(1), 98 Stat. 2027, 2031, *amended by* Sentencing Reform Amendments Act of 1985, § 4, 99 Stat. 1728 (repeal effective Nov. 1, 1987). Accordingly, Thompson has not shown that the Parole Commission's decision would be different without the admissions, and any alleged wrongful inducement is harmless error. *Cf. Bradley v. Fairfax*, 634 F.2d 1126, 1131 (8th Cir.1980) (any wrongful disclosure of grand jury testimony at parole revocation hearing was harmless error).

## III. CONCLUSION

The district court's order of dismissal is affirmed.

---

**2.** This court has noted that urinalysis testing may not be so reliable as to present an unrebuttable presumption of guilt. Thus, prisoners should have the opportunity to present defenses or rebut the urinalysis results. *See generally* *Spence v. Farrier*, 807 F.2d 753, 755–57 (8th Cir.1986). Nevertheless, Thompson has not raised these concerns and thus such issues are not now properly before this court.